Good morning, welcome to the 11th Circuit. We're happy to have you all here with us today. I want to apologize for the small delay in getting started. The reason is that we wanted to see if we were able to fix the live stream problem. Unfortunately, we cannot, and so there will be no live streaming today unless it was fixed within the last 20 seconds, but we will be recording the arguments and we will be posting them on our website so they will be able to be heard at a later time, but that is the reason for the delay. We were hoping we might be able to fix the problem, but it doesn't look like that's going to happen any time very soon, so we thought we'd go ahead and get started. Just a reminder on how our lighting system works, I think you're all familiar with it, but just as a reminder, when the yellow light goes on, that means you have two minutes left, and when the red light goes on, that means your time is up. We ask that you please respect the lights and cease your argument when the red light goes on. The exception to that is, of course, if we've asked you a question, we do want to hear the answer to that question, and in that case, please do go ahead and answer the question even if it takes you over the time. All right. Our first case today is Lange v. Sig Sauer, Inc., and we'll hear first from Attorney Phillips. Good morning, Your Honors. I may have pleased the Court. My name is Carter Phillips, and I represent Sig Sauer, Inc. as the defendant appellant in this matter. The first and, to my mind, fatal flaw in the district court's opinion or decision in this case was in the failure to abide by Rule 702 in allowing the plaintiff's experts to testify in this particular case, and the error is candidly plain on the face of the court's opinion after the Daubert hearing because Rule 702 says quite explicitly that before any expert testimony can be admitted, it is necessary for the district court to make a statement of evidence that the testimony is based on sufficient facts and that the testimony is the product of a reliable method. And in her opinion, after, in response to my client's argument that it's not based on adequate facts, it's not based on a reliable method by looking at what exactly caused this particular injury, the district court's response is, those two objections both concern the plaintiff's experts chose to use in their analyses, thus those objections are not the proper subject of a motion to exclude. That's 209 of the appendix. That's exactly the opposite of what is required by Rule 702. She was supposed to examine both the factual basis and the reliability of the methods. Having failed to do that, she allowed experts to testify that this would not have happened but for the absence of a tab trigger. There is no basis for that, for that as an expert test, for an expert to testify based on the failure to abide by the, by Rule 702 under those circumstances. You've pointed to the fact that their two experts did not examine the gun to determine why the, why the gun went off. What their, what opposing counsel responds in their brief is that the fact that they did not test to confirm Lange's testimony about the gun's position does not make their opinion inadmissible. Instead the jury could believe that Lange, could believe Lange that the P320 was holstered and then credit the expert testimony that a tab trigger would likely prevent an unintentional discharge, excuse me, of a holstered gun. How do you respond to that? Part of the obligation of the expert is to examine all of the facts underlying the incident and indeed one of the experts identified himself as an incident reconstruction expert. And it seems to me in that context you have to take into account not only the evidence that the plaintiff put forward but any other additional evidence because that's what you would do. That goes both to the facts that you would inquire into and the method of coming up with an opinion. And if you inquire into those, you know one, that his first statement to the investigating officer was that he was pulling the gun out of the holster at the time that he, you know, at the time the incident occurred. Two, that there is a hole in the holster that is inconsistent with it being fully holstered at the time. And of course there is our expert testimony that says it was unholstered by more than enough to allow a finger to have fired the gun. So it's fatal in your mind for this expert testimony, the failure to test this gun. Yes, absolutely. And three other courts of appeals have evaluated exactly these same three experts, evaluated almost identical testimony and said that that failure to do an investigation of the basic facts involved in the incident itself is fatal to the admissibility of that evidence. Of course, opposing counsel is going to distinguish those three cases and say that here we do have testimony from Mr. Lange that he was simply removing the gun and the holster from his waistband, getting ready to put it in his gun safe. Is that enough to distinguish? No, it doesn't distinguish the cases. There are two questions. The first question is, is there, is the expert testimony admissible? And the answer to that question, all three of those, all three of those courts and this evidence is not admissible, regardless of what the plaintiff says. These are not experts because experts look at the specific cause of the incident that's at issue. How can you say something could have been prevented without having any idea what caused it to happen in the first instance? But, so here's the question though. Based on Mr. Churton's testimony, I understood him to be saying that if there was some kind of a jostling or an impact that causes the internal safety mechanism to move by one twenty-fifth of an inch, and then there is another impact on the gun, that the gun could fire without pulling the trigger. First of all, let me ask you, did I misunderstand that? Because maybe I did. I mean, he did testify to that. I think he's wrong about that, obviously, but more fundamentally, what he didn't testify to is that that could happen in a fully holstered gun and leave a bullet hole in the holster that's consistent with the evidence in this specific case. That's the ultimate flaw here. I'm not saying that as a matter of theory, that the expert couldn't make a claim. I mean, look, the basic argument of the plaintiff's expert is, this is a safety device. Safety devices are more likely to be safe than non-safety devices. You probably don't need an expert to testify to that, but, you know, that's fine. What the expert has to do is not sit there and speculate about what could have happened. What he has to do is he has to look at the specifics of what did happen and then test it. Why isn't that enough if the jury believed Mr. Lange's testimony that he did not, that nothing pulled the trigger? His finger didn't pull the trigger. There was nothing to pull the trigger. Because that doesn't get you admissibility of the expert testimony. Okay? So there are two different issues here, it seems to me. First question is, is the expert testimony admissible? The answer to that is no, because he didn't do the specific analysis to determine candidly what they would have determined, because the evidence is frankly overwhelming, that in fact his finger did pull that particular trigger. But put that aside. Their job is to examine and determine exactly what happened and then render an opinion as to what the cause was. They didn't do that. And they acknowledge they didn't do that. So that evidence is inadmissible. Then the question is, is it sufficient for him to say, I don't know what happened. It just went off. I mean, remember the complaint just said it went off spontaneously. Nobody supports that position at this stage. And I don't think there's a basis to go to the jury in a case like this where you don't know what cause, where the injury is, based solely on the plaintiff's testimony that I did not touch the trigger. Let's say for purposes of this question that I agree that the expert's evidence, the expert's testimony is not admissible for purposes of causation. Would it be admissible for anything else? And if it would be, do you think that they made the proper case that that's why they were bringing it in? Do I think a proper expert could have been, could have testified in this case? These same experts, could they be, could they be admitted for, you know, an explanation that this gun is more likely to go off easily than other guns say? Yeah, no, other courts have recognized that they could testify on defect. Of course, defect is obviously a separate element from causation. Of course. I'm sorry. No, no, no. Go on. The other side of it is, is, you know, they could have done a thorough investigation of, you know, like our, like Mr. Watkins did, to show exactly how the injury took place and then come back and explain, you know, it turns out actually it probably was the finger but he didn't hit it the right way and there's, here are, here are studies that show if you hit it this way or that way. He did none of that stuff. They didn't do any of the kind of individualized investigation of the specifics of this case that would justify putting that evidence in and if you don't have that expert testimony in on causation, that element is not satisfied and the judgment should be reversed on that basis. Do you think Georgia courts necessarily, they certainly require evidence on causation and I'm, I'll be curious to hear what evidence there is besides this, but do you read Georgia cases as saying expert testimony is necessary for causation in all cases or in complex cases? Well, I, yeah, I mean, they just say generally. I mean, the cases I can recall off the top of my head, they all say generally you're required and, you know, there are, of course, I mean, most, most other courts in other states recognize that if it's, you know, simple enough. But I don't think, I don't see how you could describe this as simple when the plaintiff has, you know, has used essentially five, excuse me, five different explanations for how this gun went off and, and so how a jury is supposed to know what sets a gun off under what circumstances seems to me is something that does, in fact, require expert testimony. The other, the only other side point I'd like to make in this case is about the, the upgrade system that the. I'm sorry, can I bring you back for a moment? Oh, of course. Yeah, yeah, absolutely. Why isn't it enough to give an explanation of how the gun could have gone off without a finger pulling the trigger if we all agree that it couldn't have gone off spontaneously? Nobody has argued it went off spontaneously. But it did go off and Mr. Lang testified that he did not pull the trigger. Because that doesn't tell you how it did go off. There's not, it's not more likely than not that something, that something jiggled it because we don't know that. And it's not more. Well, we know he was taking his holster off at the time. I mean, that is something jiggling it. Right. But there's no testimony from this, from these experts that said, if you're holding, if you're moving a holster, that that will cause a gun to fire, period. The only way that you get there is, is candidly through some foreign object. Just shaking it itself, there's no evidence that just moving a holster will cause the gun to discharge. And there is no foreign object evidence. And there ain't no attempt to show, if there had been a foreign object, one, what it would have been. And then two, whether or not a tab trigger would have made a difference with respect to a foreign object. I mean, there is a way to have expert testimony that would be relevant and admissible in this kind of a case. But that testimony requires an analysis of exactly what happened and an explanation of it. It doesn't allow you to act ostrich-like and say, I'm just going to believe the plaintiff's version of this, even if it's inconsistent with all the physical evidence and the plaintiff's own statement. And I'm not going to examine any of those, any of those alternatives. And I'm still going to be allowed to testify that it's more likely than not, if they'd had a particular feature on this gun, that this accident wouldn't have taken place. That kind of testimony is extraordinarily prejudicial. Having an expert speak like that under these circumstances shouldn't have been allowed in. You know, I'll allow my friend to tell you how there's some additional way that you can get to causation without having an expert. Let me ask you a question about Judge Bibas's opinion and Slutowski following up on one of Judge Grant's questions. Suppose we agree with you that these two experts, that their testimony was inadmissible on the issue of causation. We do have here, Mr. Lange has made statements to the police, has then made statements in the course of this litigation, and Slutowski, Judge Bibas, says that even though these same two experts talking about this same gun aren't coming in on causation, there is enough evidence to go forward on causation and that the jurors could understand without expert testimony. Why is that not this case? That's not this case because we already had a trial where the inadmissible evidence was put before the jury and the jury's been prejudiced by a claim by an expert. But if we reverse and say these expert reports don't come, shouldn't have come in on causation, why wouldn't we just do another, why wouldn't the district court judge just do another trial? I think, I mean, you certainly could do that. Is there, I guess what I'm trying to get at is, is there enough, once you exclude the experts on causation, is there enough causation evidence? I think the answer is no. Because if you ask the plaintiff what caused the injury, the plaintiff's already testified, I don't know. And if he doesn't know and the experts can't testify, I don't see how you have any evidence of causation in this particular case. I've got a question about, if I may, the failure to warn claim. Are you familiar with a case from Georgia called Key Safety Systems v. Bruner? I mean, I've read the case. In that case, the Court of Appeals seems to say that they could survive a motion to dismiss, I believe, maybe summary judgment, because there was evidence that the person would not have bought the car had she been properly warned about the role of her risk. Why wouldn't that support Mr. Lange's argument here that he wouldn't have bought this gun if he had had an appropriate warning about how easy it was for it to go off? Because there still has to be a nexus, there still has to be causation to the ultimate injury. And the fact that the tab trigger, whether the tab trigger on there or not, is ultimately irrelevant because there's no evidence that the tab trigger would have prevented the injury. So even if he bought the gun, in a sense, under false pretenses, his injury, he wasn't injured by it. There's no evidence that that caused his actual physical injury. So then the only claim he would have would be for the reduced value of the gun without a tab trigger, which I submit to you would be almost zero. But that's also not his claim in this case. He's not claiming that kind of an injury under these circumstances. All right. Thank you very much. Mr. Phillips, you have reserved three minutes for rebuttal. We'll hear next from Mr. Ramachandrapa. Good morning. May it please the Court. Naveen Ramachandrapa on behalf of Robert Brian Lang. I've got co-counsel in Philadelphia stuck under two feet of snow and apparently not be able to listen. So if anything goes wrong, it's their fault, not mine. I would like to talk about three issues. The expert causation testimony, obviously, failure to warn, which is an independent claim under this jury's verdict, and then finally the punitive damages issue. So let me start with the expert testimony. Can you jump in and tell me why the three circuits that have already opined on these same two experts about this same gun finding they did not show any causation, why do those cases not doom yours? So three reasons. Number one, it's a different posture. In each of those cases, the district court excluded the testimony under its discretion. So an appellate court can affirm discretion different ways. So that's number one. Number two is different testimony. One of the key phrases— I'm sorry. Let me stop you there. But if the district court kept it out because it found that there wasn't enough to establish a causation opinion and therefore it wouldn't be helpful, and recognizing that it's an abuse of discretion kind of issue, where is the play in the joints there that takes you over the top to show that it wouldn't be an abuse of discretion to find causation? I think it has to do with the way the opinions are articulated. So the Sotowski opinion, the Third Circuit opinion, the opinion—I'm going to read just a line from it—neither expert considered how the conditions that could cause accidental firing might have manifested on the day of Sotowski's accident. So the difference here is our experts, although they're the same, in this case said specifically what they were considering on the day of the incident. So number one, they're relying on Lange's testimony, Mr. Lange's testimony that the gun was holstered. Number two, they're relying on the fact that the gun stovepipe that jammed, the casing didn't eject. And so they're not just applying as opposing counsel described theory, they're actually looking at the theory and applying it. Now it's 100 percent true, they are relying on the assumption that Mr. Lange is telling the truth. But they're allowed to do that. That's facts before the jury. But what about the fact that Mr. Lange also said I have no idea what caused the gun to discharge? That's right. Or thereabouts. Right. So that's right. And they're not, what he is saying is it was holstered when it went off. Now he doesn't know exactly what caused the trigger to pull, but that doesn't change their ability to rely on that unequivocal statement that it was holstered. But you do also, on the stovepiping issue, you do concede, I'm assuming, that a gun can stovepipe when it is fully in a holster or when it is starting to come out of the holster? It can. There can be different reasons for stovepiping. But our experts indicated, to use the exact language that they did, it was, quote, quite significant, it's very significant that it stovepiped. That would indicate the gun was in the holster when it fired, and it's a common cause. So again, going to what a jury decides, that most likely the stovepiping was because of the friction that the holster places. Now there can be other causes, but they've provided what they need to, which is it's more likely to have been caused by the friction. But we still don't have, as I see it, anything, any testimony or any evidence about what did happen as opposed to what didn't happen. Right? So how do we get across that? I looked for cases in Georgia and didn't see any where there was maybe evidence that something could have happened, but not that it did. So why do you all get over this hump where others haven't? So one way that I thought about it is, it's like differential diagnosis in the medical setting, and to be clear, courts, these other three, well not all three, two of the courts that have analyzed these six-hour cases, so the Sotowsky opinion from the Third Circuit, the Davis opinion from the Sixth Circuit, both say that causation goes to the jury, even though in those cases the witnesses said the same thing that Mr. Lange says, I don't know what went on, or what caused it to be, the trigger to be pulled, all I know is in the holster. So let me go back to the differential diagnosis part that I was talking about. There are three possibilities, I think we all sort of agree. One is it's his finger, two is it's the holster, or three, it's a foreign object. Now each of those are highly improbable if there's a tab trigger, assuming Mr. Lange is correct that it's in the holster, and I go through each one of them. So let's start with the foreign object. Opposing counsel said there's no evidence of foreign object, that's not true. Mr. Lange testified that in his safe he had coin collection, he had paperwork, and so the jury can find that that was the type of foreign object that would have been in there. And that is less likely if you have a tab trigger, because if it's in the holster and you've got a tab trigger, it's like the magic bullet, magic loogie from Seinfeld that has to go down and then make a right turn in the middle of that. But you do concede if there was a foreign object inside the holster, it is entirely possible that during this procedure where he's pulling it out of his waistband, that the foreign object could directly touch the trigger, and then the tab trigger would have no effect, right? Possible, yes, theoretically possible, but as our expert said, highly improbable. And there's no certainty standard, we're not required to prove to a certainty that there's no other outcome, it's enough to say highly improbable. And you do concede that whether it was a foreign object, holster, or his finger, if any of the, if the gun went off due to a direct trigger pull for any of those three things, this safety feature would have, would not have prevented the accident, right? Correct. And again, the likelihood that it does have a fully flush and direct trigger pull under those three scenarios where it's fully holstered or even partially holstered is very unlikely. And that's, that's all that they opined, and that's all that a jury needs to analyze this question. And again, in the Slutowski opinion and the Daves opinion, courts agreed. They said those are issues that go to a jury based on essentially the same sort of analysis where we don't know what caused the trigger to be pulled, but it was highly unlikely that it would have been a direct, fully flush trigger pull in a holstered gun. In Slutowski, it looks like the plaintiff actually said on his telling, something could have gotten into the holster, lightly pressing the trigger, and so disengaging the safety lock. Then when he went to draw the gun, the motion jostled it, dislodging the sear, releasing the striker, and firing the gun. Do we have direct testimony from Mr. Lange that he thinks that that's what happened, or do we have a different piece of argument being put together that we're now combining to say maybe this is what happened? On the holstering? No. I mean, Mr. Lange is unequivocal 100%. It was holstered. My, it talks about how he touched the back of the grip, so not the trigger, but the back of the gun. And he put his hand, because he would take the entire holster off. It wasn't like he was taking one out of the other. So that's consistent unequivocal testimony. What we have presented is a way that the jury could say, okay, if you accept their expert's testimony that the gun is partially unholstered, okay, in that scenario, a jury can, resolving conflicts and testimony, say, okay, well, the reason he doesn't remember ever touching the trigger is because he never fully flushed, touched it. It was only a light graze. And that's a reasonable way juries can resolve conflicts. They can say, okay, well, maybe he doesn't remember touching it because he didn't really touch it. He, it was just a light graze. And that's an example of where a tab trigger would have made a difference. But his testimony is very clear. I wonder if this is a case where expert testimony on your side that actually looked at and engaged with a gun would have been helpful to a jury. Because why isn't a jury left basing its decision on speculation, where we have evidence from one side saying, here's what, here's what must have happened. But the other side, we have saying, here's what might have happened. Is that, how is a jury supposed to resolve that conflict? Well, I don't think it's spec, it's not speculation based on the expert's testimony plus length. So the experts all say, not, you know, here's 10 probabilities. They say the, it's highly improbable that there would have been a fully flushed trigger pull if it's holstered. So that, that's, there's no speculation there. The only thing the experts don't say is, because they don't know, they don't know whether it was holstered or not. Mr. Lange is the one who's saying, unequivocally, no speculation, it was holstered. And that's, juries are allowed to do that. They're allowed to say, I accept the plaintiff's testimony that it was fully holstered. And then using that, and as the experts did, make a decision about whether they think it's more likely than not at that point to have prevented it. So if it, so assume it was fully holstered, then how did it go off? One of those three options, either it is the holster. Holster puts pressure, and again, I think I heard opposing counsel say there was no evidence of that. That's not true. Our expert vigilante said, quote, holster can contact the trigger, can put pressure on the side. So number one, it's fully holstered, but the sides of the holster put pressure on it. Number two, foreign object. As I discussed earlier, there were coins in that safe. There was paperwork, a paperclip. That could have also caused it. And then number three is if we accept their hypothesis that it's sort of partially unholstered, then a light finger raise could have caused that same impact to happen. And we don't have to, again, it's like differential diagnosis. You don't have to prove exactly what was the thing that did it. All you have to prove is that more likely than not, a tab trigger would have prevented that from happening. In a medical malpractice case, you have to show that the person died because of a medical error rather than some separate condition, right? Right. And it's the tab trigger is the malpractice here, not having the tab trigger. Well, right, but I guess the question is, since we don't have any evidence about what did happen, isn't it harder to say that the absence of the tab trigger is what really caused that? No, and it really, it goes to, it's the holstering mainly. The holstering reduces those probabilities. So it means that of the probabilities of things that could have happened, when it's fully holstered, you can't get your finger down to make a full flush trigger pull. When it's fully holstered, foreign objects can't, it's very unlikely that they can get down, make that right turn, and get right into the trigger. That's why, that's the differential part of it. It excludes those, not fully, I agree it's not 100%, excludes those alternative hypotheses, but it makes them so unlikely that that gives us the probability for a reasonable jury. And again, that's exactly what other courts have held as well, Satowski, the Davis case, they all recognize that the jury can decide which one of those probabilities occur, even though they don't know exactly what caused the trigger pull. I'm going to transition to failure to warn, unless there are any other questions about the experts. So as Your Honor asked about the, I think the Brunner case, I think this is true generally, failure to warn is an independent claim, and that provides a sufficient basis to affirm the jury's verdict, particularly where we have a special verdict form that has findings as to each of the different elements. So even if the causation testimony about what exactly caused the gun to fire, if Mr. Lang wouldn't have purchased the gun, that provides its own separate independent claim. Even if there was a direct pull on the trigger such that the safety feature would not have prevented the accident. Yes, because there are other parts of the gun that make it defective, in particular with Mr. Lang's decision to purchase this, it's the trigger length, I think this was alluded to earlier, it's a very short trigger pull, and this is the only single action gun on the market that doesn't have an external safety. And so if Mr. Lang isn't going to purchase this gun, regardless of the direct pull versus non-direct pull, that provides its own basis for causation. Here's a hypo based on Brunner. What if in Brunner, obviously it was, in the real case it was a rollover accident and the failure to warn was about rollover risk, but what if there had been a true rollover risk and the evidence showed that Ms. Brunner definitely would not have bought the Jeep if she had known about that rollover risk, but she died in a car crash because she didn't hit the brakes in time before a tree, would the failure to warn claim still succeed, since obviously if she hadn't bought the Jeep, she wouldn't have been in that accident? Yeah, I think generally Georgia courts say no on that point, and the difference between that hypothetical and this hypothetical, and these facts, is that the risk that is not being warned about is the likelihood of unintentional discharge. Whether a tap trigger would have prevented that or not, that's not the failure to warn. Failure to warn is failure to warn that there is this high risk of unintentional discharge, and so that's why it still applies here as opposed to that. What do we do with the fact that Mr. Lang did a lot of research before purchasing this gun? In fact, the district court excluded the other safety feature because he said he wouldn't have bought the gun with the other safety feature, more or less. But he's looking at this, he's aware of the short trigger pull, if he's doing his research, he finds out all these details about this gun, and he decides to purchase it anyway. How does that not harm your argument? Well, I guess I'd point to two main facts. Number one is it was advertised as a double action pistol, and he assumed it was, and in fact it was a single action. So that's number one, he isn't given the full information. Number two is the representations in the advertising are this is a gun that won't fire unless you want it to. There's the, for example, the trigger pull weight, so the weight, or the pressure to apply, if I may finish that last point, was advertised at six pounds, and in fact it was closer to 4.5. I didn't get to the...  Okay. I've got one more for you too, if you don't mind. Well, I'm sure you don't mind. I want to make sure Judge Rosenbaum doesn't mind. Go ahead. On the accidental discharge evidence, you've not appealed the exclusion for any reason besides punitive damages, right? The other incidents? Right. Well, no. I would say that's like 99% of our argument. However, if there were a reversal and remand for a whole new trial on liability, then it would be more than just punitives. It would also come in for a compensatory as well. Did you preserve the ability to make that argument since the district court excluded that evidence for liability purposes? Yeah. I mean, so we made a motion in Lemony to introduce this evidence. Motion in Lemony was denied, theirs was granted. In our appeal brief, we very clearly say, out of an abundance of caution, if there's a retrial, then we should be able to introduce this for more than just punitives. But certainly, obviously, we don't think that there should be any retrial other than for punitive damages. Thank you. Thank you.  Thank you. Mr. Phillips, you've reserved three minutes. Thank you, Your Honors, and I'll attempt to be briefer than three minutes. First of all, my friend here says there are three possibilities. One was that the finger actually pulled the trigger, and then he says that the expert said that that was very improbable. But the reality is the expert never testified to that scenario. And there's no evidence as to whether or not this would be a grazing pulling of the trigger or not. And the scenario, which, candidly, is the most likely one given the physical evidence of the shot through the holster, which is that it was a full finger flush that would have pulled the gun out of the holster, which was itself not a tight holster to begin with. Isn't that a jury question, though, as to whether it was a full finger pull or a graze? Because in order to get to the point of an expert testifying about what happened here, you have to take into account all of the scenarios. He said it himself. There are three possible scenarios, two of which are at least dealt with by the expert, one of which is utterly ignored by the expert. And it seems to me that in order to get over the hump of adequate factual analysis that's required by 702 and a reliable methodology, you have to look at all of the hypotheses and examine how they play out. So let me just make sure I'm understanding what you're saying. Are you saying that if Mr. Turton or Mr. Vigilante had testified that there were three possibilities, one is it could have been a foreign object, the other is it could have discharged just from the jostling, and the third is that there could have been a finger graze as opposed to a full finger pull? And then shown that based on, as it goes to methodology, that based on their careful analysis of exactly what happened in this situation, we can discount these in a particular way. He never did that. Well, let me ask you a question, though. It sounds like, what is the other way that it could have happened? There are basically four ways it could have happened. One, he pulled a full finger pull. Two, he grazed it. Three, there was a foreign object. Or four, there was some jostling and it went off on its own. Right? Nobody's suggesting there's anything else that could have possibly been how this happened, right? Right. Because it can't happen spontaneously. Right. Okay, so if their expert or experts testify to the three other than the full finger pull and say that any of those three were, that any of those three were what would have had to have happened in the absence of a full finger pull, why isn't that enough? Because you still haven't done what an expert's supposed to do, which is to look at the specifics of what happened and make a determination in your best judgment as an expert as to what actually caused it and therefore what could prevent it. So you're saying they had to choose one of those three? They had to analyze it. The same way our expert analyzed it, by looking at where the gun, where the trajectory of the bullet was and what was the best explanation for how all the physical evidence lines up. What you shouldn't be allowed to do is to say, I'm just going to listen to the plaintiff's version. Okay, they never touched the gun, never touched that trigger and that's all I'm going to look at and then you're allowed to testify that not knowing what caused this injury, I can tell you with, on any expert basis, what would have prevented that injury. It's just simply illogical to say, I don't know what caused it, but I know what would have prevented it. That's not the way it goes and that's exactly how the other three courts of appeals have examined this precise problem and said, look, experts can't just opine in the abstract. They have to, at some point, look at those principles as they apply to the specifics of this case and it is undisputed that these experts never did that. May I ask one clarifying, just to make sure, Judge Rosenbaum was listing possibilities. The holster is also a possibility, as I understand it. Am I correct that somehow if it was partially holstered, part of the holster could have caused the discharge? Well, I mean, their expert doesn't testify to that. Okay. I mean, because they don't have a holster expert and he didn't look at the holster. So I mean... And they didn't sue the holster manufacturer. Right, exactly. So I mean, you know, I haven't thought to try to come up with more scenarios about what would cause a gun to go off under circumstances that are conceivable here. But it does seem to me, at a minimum, the ones that are obvious, the expert has an obligation to fulfill and to handle it. Could you respond to your friend on the other side's point about the failure to warn that so long as there's a connection between the accident and the failure to warn, that's enough? Judge Graham, I couldn't have... I think the hypothetical you posed is exactly the hypothetical, is exactly the situation here, which is if you have a rollover, I wouldn't have bought it if I'd known it was more likely to rollover and then I get sideswiped by somebody or I sideswiped somebody because I wasn't paying any attention. I didn't get hurt with a rollover. I don't get to claim the damages because I wouldn't have bought the car in the first place. Here, first of all, he didn't say he wouldn't have bought the car without the tab trigger. But it's absolutely clear that if we're right, that the tab trigger didn't have anything to do with the injury and therefore he is entitled to that. The only thing he would be entitled to under that approach, I would argue, is the reduced value of the particular weapon. This is a little closer, obviously, than the hypo that I posed, right? Because this is about the gun going off accidentally. I don't think anyone disputes that that's what happened. Right. But I also don't think that the plaintiff would have refused to buy this gun if he knew that if he pulls the trigger inadvertently that it will, in fact, go off because I think most people who buy a gun expect the gun, if the trigger is pulled, whether they intend to do it or not, that it will, in fact, go off. So if he had, in your view, if he had better evidence on causation to show that a full trigger pull is not what caused the gun to discharge, then he would have a better failure to warn claim? Is that your argument? Yeah. I think if you could prove that there is a closer connection between the two. But if you don't have any evidence that the finger pull would have prevented it because you don't have any, because none of the expert testimony is admissible, then I don't see how you're any different, candidly, than the rollover situation. Are there any cases you could direct us to that talk about that kind of connection? I think the most obvious cases are where, of course, the risk is the one that everyone agrees that the failure to warn is related to. Do you know of any that are further afield? Not off the top of my head, no, Your Honor, because we weren't looking for that particular problem because it still seemed to me they had an obligation to prove that there was a causation, both as to the failure to warn causation as to the physical injuries. There may be cause for other injuries, I don't think there are, but there may be, but not for the physical injuries because one had nothing to do with the other. If you accept our view, which I think is right, that the expert testimony doesn't get you there. So you think that causation for the physical injuries is a necessary kind of precondition to obtain recovery for the physical injuries? Right, to obtain recovery for the physical injuries, yes, of course. Thank you. No further questions. Thank you, Your Honor.  Thank you, Your Honor. Our next case is...